UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                 :

SONY MUSIC ENTERTAINMENT, ALAMO    :
RECORDS, LLC, ARISTA MUSIC, ARISTA    :
RECORDS, LLC, LAFACE RECORDS, LLC,    :
RECORDS LABEL, LLC, ULTRA RECORDS,    :
LLC, and ZOMBA RECORDING LLC,        :
                                 :

                        Plaintiffs,  :
                                 :

              -v-                    :
                                 :

UNIVERSITY OF SOUTHERN CALIFORNIA,  :
                                 :
                   Defendant.  :
                                 :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/13/2026

1:25-cv-2042-GHW

MEMORANDUM
OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

      The University of Southern California ("USC") markets itself using social media. USC has posted hundreds of videos online to promote its athletic and other programs. According to Plaintiffs, over 250 of those videos were set to a soundtrack of music that Plaintiffs owned, and for which USC has refused to pay. In this motion to dismiss Plaintiffs' claim for copyright infringement, USC has not challenged Plaintiffs' contention that USC's unlicensed use of their recordings violates the law. Instead, USC argues that Plaintiffs must pursue their claim in California, where it is located. However, because Plaintiffs have established that USC's alleged misconduct caused Plaintiffs more than indirect financial loss and that there is no other specific location where the injury of USC's misconduct was felt, the Court has jurisdiction over USC under New York's long arm statute. As a result, USC's motion to dismiss is DENIED in part.

## II.    BACKGROUND[1]

### A.  The Parties

Plaintiff Sony Music Entertainment ("SME") is a Delaware general partnership. Compl. ¶ 19.  Plaintiff Arista Music is a New York partnership.  *Id.* ¶ 21.  All of the other Plaintiffs—Alamo Records, LLC ("Alamo"), Arista Records, LLC ("Arista Records"), LaFace Records, LLC ("LaFace"), Records Label, LLC ("Records Label"), Ultra Records, LLC ("Ultra"), and Zomba Recording LLC ("Zomba")—are Delaware limited liability companies.  *Id.* ¶¶ 20, 22–26. "Alamo, Arista Music, Arista Records, LaFace, Records Label, Ultra and Zomba are companies owned by or affiliated with SME."  *Id.* ¶ 27.  All of the plaintiffs' principal place of business is located at 25 Madison Avenue in Manhattan.  *Id.* ¶¶ 20–26.

Plaintiffs are "engaged in the business of producing sound recordings and distributing, selling, and/or licensing the reproduction, distribution, sale, preparation of derivative works based upon, and performance of sound recordings in phonorecords . . . and downloading over the Internet and through other mediums."  *Id.* ¶ 28.  They invest "substantial money, time, effort, and creative talent in discovering and developing recording artists, and in creating, advertising, promoting, selling, and licensing sound recordings embodying the performances of their exclusive recording artists and their unique and valuable sound recordings."  *Id.*

---

[1]  The facts are drawn from Plaintiffs' complaint, Dkt. No. 1 ("Compl."), and the accompanying affidavits, declarations, and other written materials that are appended to both Plaintiffs' complaint and Plaintiffs' memorandum of law in opposition to Defendant's motion to dismiss, Dkt. No. 32 ("Opp'n").  Some facts are drawn from the affidavits and other written materials that are appended to Defendant's motion to dismiss.  Dkt. No. 29 ("Mem.").  For purposes of Defendant's jurisdiction-testing motion, to the extent that the parties' affidavits conflict, "all factual disputes are resolved in the [non-movant]'s favor."  *Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d. Cir. 1993) (citation omitted).  For purposes of Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers the facts pleaded in the complaint, which are accepted as true for the purposes of the motion.  *See, e.g., Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Throughout, page numbers refer to the referenced document's original pagination, except that the parties' exhibits are paginated according to PACER's pagination.

Defendant USC is a private research university and nonprofit corporation, incorporated under the laws of California, with its principal place of business in Los Angeles. *Id.* ¶¶ 29, 48; Dkt. No. 29-1 ("Mot.") at 3; Ex. A, Decl. of Lila Mauro ("Mauro Decl.") ¶¶ 4–5. USC reports annual operating revenues in excess of $7 billion, including approximately $320 million in revenues derived from "auxiliary enterprises," such as USC's athletics program. Compl. ¶ 48. USC's athletics program, the USC Trojans, is among the most lucrative in the nation. *Id.* ¶ 49. The program generated more than $212 million in the 2022-2023 school year. *Id.* ¶ 50. That revenue is derived from, among other things, "media rights, sponsorships, royalties and licensing, ticket sales, and merchandise." *Id.*

Plaintiffs allege that USC's athletics program has the "hallmarks of a commercial enterprise." *Id.* ¶ 51. The complaint quotes USC's athletics director as explaining that: "All athletic directors are thinking 24/7 about revenue generation." *Id.* "Social media is a crucial and valuable marketing tool that USC uses to promote its brands and sports programs, and ultimately increase its 'auxiliary enterprise' revenues." *Id.* ¶ 52.

Although USC is based in California, its activities extend into the State of New York. USC organizes events in New York "relating to recruiting, admissions, networking and sports, and maintains an active alumni club in New York." *Id.* ¶ 32. Until recently, USC maintained a "University Advancement" office at 600 Madison Avenue in Manhattan. *Id.* ¶ 32; Mot. at 4.[2] New York residents made donations to USC through that office. Compl. ¶ 32. Moreover, New York residents paid tuition for USC academic programs conducted in New York, purchased USC merchandise and tickets to USC sporting events, and participated in USC's New York recruiting and networking events. *Id.* ¶¶ 32–33.

---

[2] USC's University Advancement office closed on March 10, 2025—the day before the complaint was filed in this case. Mot. at 4. However, the office was in operation throughout the period during which USC allegedly infringed upon Sony Music's copyrights. *See* Compl. ¶ 32.

### B.  The Social Media Videos and USC's Marketing Strategy

USC operates and controls dozens of official social media accounts (the "USC Social Media Pages") on platforms such as YouTube, Instagram, Facebook and TikTok.  *Id.* ¶¶ 4, 68, 96; Dkt. No. 1-1 ("Compl. Ex. 1").  Plaintiffs allege that USC's social media channels are operated by USC and that "[n]one of these channels are personal student or faculty accounts."  *Id.* ¶ 4.  USC uses its pages to promote its academic programs, athletic events, and merchandise, and to appeal to prospective students, donors, fans, and customers.  *Id.* ¶¶ 52–53.

Plaintiffs allege that USC incorporated popular sound recordings owned by Sony Music into hundreds of promotional videos disseminated on the USC Social Media Pages (the "Infringing Videos") without obtaining a license.  *Id.* ¶ 9.  The Infringing Videos were part of a "marketing strategy designed to enhance USC's brand, expand its reach, and increase its revenues."  *Id.* ¶ 34.  Specifically, Plaintiffs allege that the Infringing Videos used Sony Music's popular recordings "to tie USC's brand to the iconic success of Sony Music artists and the instant recognition and good will of classic hits . . . ."  *Id.* ¶ 59.  For example, one such video, entitled "2024 USC Football:  Arrival of the Trojan—Season Trailer" (the "2024 Trojan Hype Video"), used Sony Music's recording "Like That" by Future, Metro Boomin and Kendrick Lamar.  *Id.* ¶ 68.  The video was viewed more than 100,000 times on YouTube alone.  *Id.*  Plaintiffs compiled a "representative list" of over 250 Infringing Videos, posted across thirty USC Social Media Pages, which used over 170 Sony Music sound recordings.  Compl. ¶ 17; Compl. Ex. 1.

Many of the Infringing Videos contained USC branding and directed viewers to the USC Trojans' website, where they can buy tickets, merchandise, and obtain information regarding upcoming USC games and sports teams.  *Id.* ¶ 66–67.  Sony Music asserts that, because of this social media marketing strategy, USC has enjoyed "increased revenues from advertising and sponsorship

partnerships, direct spending on ticket sales and merchandise, and other financial gain." *Id.* ¶ 6; *see also id.* ¶¶ 53–55, 67.

Consistent with the alleged scale and significance of USC's social media marketing strategy, the infrastructure that supports that strategy is extensive. USC has a division that focuses on "Creative Content/Social Media," including a Chief Creative Officer ("a C-level Officer"), a Director of Social Media, and an Assistant Director of Social Media. *Id.* ¶ 95. USC also maintains "Brand and Identity Guidelines" (the "Brand and Identity Guidelines"), which govern content posted on its website and social media accounts. *Id.* ¶ 91-94. Those guidelines require, for instance, that content posted on USC channels "must follow and respect U.S. copyright laws." *Id.* ¶ 91; *see also id.* ¶¶ 92–93. The Brand and Identity Guidelines also require that any school units setting up a social media page to "[i]dentify a full-time employee dedicated to managing your unit's social media content and conversation monitoring." *Id.* ¶ 94.

### C. Sony Music's Notice and USC's Alleged Copyright Infringement

Sony Music alleges that it first notified USC of its unauthorized use of Sony Music's sound recordings in June 2021. *Id.* ¶ 7. After the first notice, a USC representative told Sony Music that USC had removed the Infringing Videos from USC's Social Media Pages, although, according to Sony Music, USC had not done so. *Id.* ¶ 77. Instead, USC continued to upload Infringing Videos, including ones containing the same sound recordings that Sony Music had identified in 2021. *Id.* ¶ 78. Sony Music sent more notices in January 2023 and in July 2024 identifying additional instances of unauthorized use. *Id.* ¶¶ 11–12. In August 2024, the parties entered into a tolling agreement to permit settlement discussions, which expired after January 15, 2025. *Id.* ¶ 13. According to Sony Music, USC declined to extend the agreement and continued to disseminate infringing videos after its expiration. *Id.* ¶ 14.

### D. Procedural History

Plaintiffs filed this action on March 11, 2025, asserting claims for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the "Copyright Act"). *Id.* ¶¶ 1, 97–102.  In addition to asserting a direct infringement claim, Plaintiffs asserted claims for vicarious and contributory infringement. *Id.* ¶¶ 103–112, 113–122.  As the basis for those claims, Plaintiffs asserted that "[i]f USC is not directly liable for the infringing conduct within the USC Videos on the USC Social Media Pages, then it is at least vicariously liable for such conduct." *Id.* ¶ 104.  Plaintiffs did not, however, allege that any person other than USC was responsible for the postings.  Plaintiffs sought a permanent injunction enjoining USC from directly and indirectly infringing any of Sony Music's copyrighted works, and statutory damages under the Copyright Act. *Id.* at 25–26.

On June 6, 2025, USC filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6). *See* Mot. at 1.  First, USC argued that it was not subject to general personal jurisdiction in New York, and that it was not subject to specific personal jurisdiction pursuant to any provision of New York's long-arm statute, C.P.L.R. § 302(a).  Mot. at 4–22.  Second, USC argued that venue was improper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims did not occur in New York, and USC was not subject to personal jurisdiction in New York. *Id.* at 23–24.  Third, USC argued that Plaintiffs' claims for vicarious and contributory copyright infringement failed as a matter of law because Plaintiffs had not pleaded infringement by a third party. *Id.* at 2, 24–26.

On July 10, 2025, Plaintiffs filed their opposition, in which they argued that the Court had specific personal jurisdiction under two provisions of New York's long-arm statute: N.Y.C.P.L.R. §§ 302(a)(1) ("§ 302(a)(1)") and 302(a)(3)(ii) ("§ 302(a)(3)(ii)"). Dkt. No. 32 ("Opp'n").  Plaintiffs argued that USC was subject to personal jurisdiction under. § 302(a)(1) because USC transacted business in New York at the time of the alleged infringement, and because its business transactions were sufficiently related to the copyright infringement claims at issue. *Id.* at 13–16.  Plaintiffs

contended that USC was subject to personal jurisdiction pursuant to § 302(a)(3)(ii) because the "situs of the injury" is where Plaintiffs are located—New York. Plaintiffs argued that this case "falls squarely under" the Court of Appeals' decision in *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295 (2011) ("*Penguin II*"), in which the Court of Appeals held that "[i]n copyright infringement cases involving the uploading of a copyrighted printed literary work onto the Internet," "the [situs of injury] is the location of the copyright holder." *See* Opp'n at 8; *Penguin II*, 16 N.Y.3d at 301–02. Plaintiffs also argued that exercising jurisdiction over USC comported with the requirements of constitutional due process. *Id.* at 17–19. Moreover, Plaintiffs argued that, because the Court had specific jurisdiction over USC, venue was proper under 28 U.S.C. § 1400(a). *Id.* at 19. Finally, Plaintiffs contended that they had adequately pleaded claims against USC for vicarious and contributory infringement, because they "need not specifically identify the party who has infringed." *Id.* at 22.

USC filed its reply on July 21, 2025. Dkt. No. 34 ("Reply"). USC argued that it was not subject to jurisdiction under § 302(a)(1) because Plaintiffs did not "assert plausible facts showing an <u>articulable nexus</u> or a <u>substantial relationship</u>" between USC's New York transactions and the alleged copyright infringement. *Id.* at 3 (emphasis in original). USC also argued that it was not subject to personal jurisdiction under § 302(a)(3)(ii). *Id.* at 5. USC contended that the holding of *Penguin II* is inapplicable to cases like this one, which "do not involve allegations of digital piracy." *Id.* at 6. Moreover, USC argued that Plaintiffs' secondary infringement claims must fail because Plaintiffs did not "allege direct infringement by another party." Reply at 11 (internal quotation marks omitted).

### III.    LEGAL STANDARD

#### A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

On a motion to dismiss pursuant to Rule 12(b)(2), the non-movant "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (*per curiam*)); *accord Bank Brussels Lamberts v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (same).  The non-movant's burden of proof "varies depending on the procedural posture of the litigation."  *Dorchester Fin. Sec., Inc.*, 722 F.3d at 84 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  At the pleading stage, and prior to discovery, a non-movant need only make a *prima facie* showing that jurisdiction exists.  *Id.* at 84–85; *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a [non-movant] must make a *prima facie* showing that jurisdiction exists.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)).  "This prima facie showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'"  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).

"On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying affidavits, declarations, and other written materials." *Knight*, 531 F. Supp. 3d at 760; *accord MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727–28 (2d Cir. 2012).  The Court "construe[s] the pleadings . . . in the light most favorable to [the plaintiff], resolving all doubts in [its] favor."  *Id.*  But if the parties present conflicting affidavits, "all factual disputes are resolved in the [non-movant]'s favor, and the [non-movant]'s prima facie showing is sufficient notwithstanding the

contrary presentation by the moving party." *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft*, 989 F.2d at 580 (citation omitted). Courts will not, however, "draw argumentative inferences in the [non-movant]'s favor . . . [or] accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (internal quotation marks and citation omitted).

District courts "resolving issues of personal jurisdiction must . . . engage in a two-part analysis." *Bank Brussels Lambert*, 171 F.3d at 784. "First, they must determine whether there is jurisdiction over the [movant] under the relevant forum state's laws. . . . Second, they must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Id.* "To establish personal jurisdiction over a [movant], due process requires a [non-movant] to allege (1) that a [movant] has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks*, 714 F.3d at 673 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "To determine whether a [non-movant] has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *Id.* Courts "may assert general personal jurisdiction over a foreign defendant to hear any and all claims against that defendant only when the defendant's affiliations with the State in which suit is brought 'are so constant and pervasive as to render it essentially at home in the forum State.'"[3] *Waldman v. Palestinian Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014)). "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

### B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3)

---

[3] Plaintiffs do not assert that the Court has general jurisdiction over USC.

Venue for civil actions related to copyrights is governed by 28 U.S.C § 1400(a).  *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 n.2 (2013) (citing 28 U.S.C § 1400(a) as governing venue in copyright and patent suits).  Under 28 U.S.C § 1400(a), a copyright action "may be instituted in the district in which the defendant or his agent resides or may be found."  28 U.S.C § 1400(a).  Under 28 U.S.C § 1391(c)(2), "[f]or all venue purposes . . . an entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C § 1391(c)(2).  Accordingly, venue for copyright cases is proper where the defendant is subject to personal jurisdiction.

### C.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  To determine plausibility, courts follow a "two-pronged approach."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).  Second, a court must determine "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).  Ultimately, determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

## IV.    DISCUSSION

In this case, Sony Music has made a *prima facie* showing that this Court has personal jurisdiction over USC pursuant to N.Y.C.P.L.R. § 302(a)(3).  Accordingly, venue is also proper in this District.  28 U.S.C §§ 1391(c)(2); 1400(a).  However, Sony Music's claims for vicarious and contributory infringement must be dismissed because Sony Music has not alleged that anyone other than USC has engaged in infringing conduct.

### A.  The Court Has Personal Jurisdiction Over USC Pursuant to New York's Long-Arm Statute

#### i.  Section 302(a)(3) of New York's Long Arm Statute

"The New York long arm statute authorizes [specific] personal jurisdiction over non-domiciliaries under [Section 302(a)]." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (citing § 302(a)).  N.Y.C.P.L.R. § 302(a)(3) permits a court to exercise specific personal jurisdiction over an out-of-state party that

> commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y.C.P.L.R. § 302(a)(3).  To establish jurisdiction under § 302(a)(3)(ii), a plaintiff must show that

> (1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce.

*Penguin II*, 16 N.Y.3d at 302.

### ii. Sony Music Adequately Pleaded That USC "Committed a Tortious Act Outside New York" That Gave Rise to the Cause of Action

Sony Music has adequately pleaded the first two elements required to establish jurisdiction pursuant to C.P.L.R. § 302(a)(3)(ii)—that is, that "(1) the defendant committed a tortious act outside New York[,] [and] (2) the cause of action arose from that act." *Penguin II*, 16 N.Y.3d at 302. Sony Music alleged that USC committed copyright infringement "outside of New York" by uploading the Infringing Videos and making them publicly available via USC's Social Media Pages. Compl. ¶¶ 10, 34, 56–58. These allegations are sufficient to establish that USC committed tortious conduct outside New York which gave rise to the alleged copyright violation. *See Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 365 (S.D.N.Y. 2020) (finding that plaintiffs established the first two elements, where they alleged that defendants committed trademark and copyright violations outside New York by selling infringing material on the internet), *adhered to in part on reconsideration*, No. 18-CV-1774 (LJL), 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020).

### iii. Plaintiffs Adequately Pleaded That USC's Tortious Act Caused Injury to a Person or Property in New York

Plaintiffs have adequately pleaded that USC's conduct injured Plaintiffs in New York. The mere fact that Plaintiffs are domiciled in New York is not sufficient to establish injury here. "It has . . . long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there." *Penguin II*, 16 N.Y.3d at 303 (quoting *Fantis Foods v Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980)). "A derivative economic injury felt in New York based solely on the domicile of the plaintiff is insufficient to establish an in-state injury within the meaning of the statute." *Id.*

However, in *Penguin II* the New York Court of Appeals held that in "copyright infringement cases involving the uploading of a copyrighted printed literary work onto the Internet," the "situs of injury"—where the harm resulting from the infringement is felt—can be the location of the principal place of business of the copyright holder, rather than the location of the infringing action. *Id.* at 302. "As support for its decision, the *Penguin II* Court relied on two factors . . . ." *Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 327 (S.D.N.Y. 2025). "*First*, the Court noted that 'the instantaneous availability of [ ] copyrighted works . . . for anyone, in New York or elsewhere, with an [i]nternet connection to read and download the [copyrighted works] free of charge' makes it difficult to pinpoint the situs of injury." *Id.* (quoting *Penguin II*, 16 N.Y.3d at 304–05). "*Second*, the Court stated that 'a New York copyright holder whose copyright is infringed suffers something more than . . . indirect financial loss . . . [f]or instance, one of the harms arising from copyright infringement is the loss or diminishment of the incentive to publish or write.'" *Id.* (quoting *Penguin II*, 16 N.Y.3d at 305).

Applying the "two factors" identified in *Penguin II*, the Court concludes that Plaintiffs have adequately pleaded that they were injured in New York—the location of their principal places of business. The two conditions identified in *Penguin II* are present here. First, USC posted over 250 videos on the USC Social Media Pages. *Id.* ¶ 17. USC posts its channels on a broad array of on-line platforms. As in *Penguin II*, Plaintiffs have pleaded that it is "difficult, if not impossible" to circumscribe their injury "to the place where its business is lost or threatened." *Penguin II*, 16 N.Y.3d at 304–05; *see also Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-CV-2897, 2018 WL 2022626, at *2, 8 (S.D.N.Y., 2018) (holding that situs of injury under C.P.L.R. § 302(a)(3) was the location of the trademark holder, where defendants used trademarked term on their websites, apps, and social media).

Second, Plaintiffs have pleaded harms to its bundle of rights as a copyright holder that amount to "more than . . . indirect financial loss." *Penguin II*, 16 N.Y.3d at 305. Plaintiffs alleged that USC's infringement "deprives artists of compensation, but also of their ability to choose how or where their music is used." Compl. ¶ 73. Moreover, Plaintiffs alleged that USC's conduct diminished their incentive "to invest in artists and their music[,]" as those incentives "flow directly from the protections afforded by copyright laws." *Id.* ¶ 41. These are precisely the sort of non-financial harms that the court identified in *Penguin II* as sufficient to conclude that Plaintiffs were injured in New York. *See Penguin II*, 16 N.Y.3d at 305 ("[O]ne of the harms arising from copyright infringement is the loss or diminishment of the incentive to publish or write."); *see also Dow Jones*, 797 F. Supp. 3d at 329 (finding injury to a unique bundle of property interests where plaintiffs' "financial incentives to create original content" was diminished, resulting in "less content being generated and/or less quality content being generated").

These facts distinguish this case from *Troma Entertainment, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215 (2d Cir. 2013). In *Troma*, a New York-based motion picture producer sued the defendants for entering into a license with a German distributor without the plaintiff's authorization. 729 F.3d at 216–17. The court in *Troma* concluded that that the plaintiff's injury could be circumscribed to a particular location—either California (where the defendants devised their scheme), or Germany (where the scheme was put into effect). *Id.* at 220. Not so here: Plaintiffs allege that their injury cannot be circumscribed to one or more locations. Moreover, in *Troma* the court reasoned that the harms pleaded were "simple economic losses . . . ." *Id.* at 220–21. Here, by contrast, Plaintiffs have alleged more than indirect financial loss; Sony has also alleged that their artists lost autonomy over their music, and that Sony experienced diminished incentives to invest in artists. Compl. ¶¶ 41, 73.

### iv. Plaintiffs Adequately Pleaded That USC Should Have Reasonably Expected its Conduct to Have Consequences In New York

Plaintiffs have adequately pleaded that USC could have reasonably expected that its use of the Infringing Videos to market its brand would have consequences within New York. "The test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (internal quotation marks omitted). "[T]he simple likelihood or foreseeability "that a defendant's product will find its way into New York does not satisfy this element[.] *Id.* (internal quotation marks omitted) (collecting cases). Rather, courts look for "a discernible effort to directly or indirectly serve the New York market." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008) (quoting *Schaadt v. T.W. Kutter, Inc.*, 564 N.Y.S.2d 865, 866 (3d Dep't 1991)). The "foreseeability" requirement under § 302(a)(3)(ii) is applied "in a manner consistent" with "federal constitutional due process limits." *Kernan*, 175 F.3d at 241.

This requirement is satisfied here. USC used the Infringing Videos to develop its brand and drive traffic to its websites. Compl. ¶¶ 33, 108. USC targeted the New York market for alumni donations, as well as ticket and merchandise sales. USC's outreach to New Yorker to sell its products constituted a "discernible effort" to serve the New York market, such that USC "should have reasonably expected its act to have consequences in New York." *Parker Waichman Alonso LLP v. Orlando Firm, P.C.*, No. 09 CIV. 7401 (CM), 2010 WL 1956871, at *10 (S.D.N.Y. May 14, 2010) (holding that law firm could have expected in-state consequences under § 302(a)(3)(ii) where defendant displayed infringing marks on its website, which was used to attract New York clients); *see also Starmedia Network, Inc. v. Star Media, Inc.*, No. 00 CIV 4647 (DLC), 2001 WL 417118, at *3 (S.D.N.Y. Apr. 23, 2001) (holding that in-state consequences were foreseeable where "[t]he

defendant used its website to attract and service business across the nation, including in New York.").

### v. Plaintiffs Adequately Pleaded that USC Derived Substantial Revenue from Interstate or International Commerce

Plaintiffs have adequately pleaded that USC generates "a substantial portion" of its hundreds of millions of dollars in revenue from interstate commerce, Compl. ¶ 33, which satisfies the final requirement of § 302(a)(3)(ii).  To determine whether revenue is "substantial," "courts have analyzed defendants' revenues from interstate or international commerce as percentages of their total revenues," as well as "the amount of interstate or international revenues as an absolute number." *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 316–17 (S.D.N.Y. 1986).  "[R]elevant authority counsels a case-by-case determination with particular emphasis on the 'overall nature of the defendant's business and the extent to which [the defendant] can fairly be expected to defend lawsuits in foreign forums.'" *Justus v. Toyo Kensetsu Kohki Co., Ltd.*, 228 F. Supp. 2d 215 (N.D.N.Y. 2002) (quoting *id.*); *see also Lawson v. Full Tilt Poker Ltd.*, 930 F. Supp. 2d 476 (S.D.N.Y. 2013).  The requirement that a defendant derive substantial revenue from interstate commerce "is intended to exclude non-domiciliaries whose business operations are of a local character." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) (citation omitted).

Plaintiffs alleged that USC generated "hundreds of millions in revenue, a substantial portion of which comes from interstate commerce including media rights agreements." Compl. ¶ 33; *see also id.* ¶ 34.  Moreover, "USC reported $212 million in total athletics revenue for the 2022-2023 school year," and "this substantial revenue is derived largely from media rights, sponsorships, royalties and licensing, ticket sales and merchandise." *Id.* ¶ 50.  Plaintiffs also alleged that "USC has one of the most lucrative college sports programs in the world, and its intercollegiate sports teams, the Trojans, are internationally recognized." *Id.* ¶ 49.  Plaintiffs' allegations regarding USC's revenues and the

scale of its operations are sufficient to establish that USC generated substantial revenue from interstate commerce.  *See Lawson*, 930 F. Supp. 2d at 486 (allegations that defendants took millions of dollars in profits from online poker company's player funds established that substantial revenue derived from interstate and international commerce).[4]

### vi.  The Exercise of Personal Jurisdiction over USC is Consistent with Due Process

The exercise of jurisdiction over USC satisfies requirements the requirements of constitutional due process because USC has sufficient contacts with New York, and the exercise of jurisdiction over USC is reasonable under the circumstances.  Once a district court finds that there is jurisdiction under the relevant forum state's laws, "[it] must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements."  *Bank Brussels Lambert*, 171 F.3d at 784.  "[D]ue process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances."  *Eades,* 799 F.3d at 167–68 (2d Cir. 2015) (quoting *In re Terrorist Attacks*, 714 F.3d at 673 (2d Cir. 2013)).  "[A]s a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances [than] N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard."  *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements.").

---

[4] Plaintiffs also argue that the Court may exercise jurisdiction over USC pursuant to § 302(a)(1).  *See* Opp'n at 13–16. Because the Court finds that it has personal jurisdiction over USC pursuant to § 302(a)(3), it need not reach the question of whether the exercise of jurisdiction would also be proper under § 302(a)(1).  *See Chloe*, 616 F.3d at 169 ("Because we conclude that Ubaldelli transacted business within the state under section 302(a)(1), we need not reach the question of whether a New York court could properly exercise jurisdiction under section 302(a)(3).")

"As to the [minimum contacts] requirement, 'we evaluate the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test.'" *Eades,* 799 F.3d at 169 (quoting *Licci,* 732 F.3d at 170). "[T]here must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Meyers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.,* 137 S. Ct. 1773, 1781 (2017) (citations and alterations omitted). It follows that "[a] defendant who deliberately engages in significant activities with or creates continuing obligations to residents of the forum state may be considered to have fair warning that claims arising from such activity could subject them to jurisdiction in that forum." *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 359–60 (S.D.N.Y. 2007).

Plaintiffs have pleaded that USC has sufficient contacts with New York. The Court has already found that Plaintiffs have established that USC is subject to personal jurisdiction under New York's long-arm statute. "Generally, if a defendant meets the contacts requirement under the long-arm statute, it also meets the minimum contacts requirement under the constitutional analysis." *Dow Jones*, 797 F. Supp. 3d at 331. Such is the case here. New York residents represent a "substantial audience of USC fans, prospective students, alumni, and donors," with whom USC seeks to engage with its social media marketing strategy. Compl. ¶¶ 5–6, 33–34. USC employs a broad social media marketing strategy designed to enhance engagement with its brand. USC's athletic competitions are regularly broadcasted into New York and New York residents purchase USC merchandise and tickets. Because the infringing conduct here is part of USC's social media marketing strategy, which fosters engagement with USC in New York, the Court concludes that USC has sufficient minimum contacts with New York. *See, e.g., Dow Jones*, 797 F. Supp. 3d at 330–31 (finding minimum contacts requirement satisfied where "Defendant allegedly advertises to New York customers, sells its

product to New York customers, and has an office in New York where employees support the sale of the allegedly infringing product").

The exercise of jurisdiction is also reasonable under the circumstances. USC does not "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Eades*, 799 F.3d at 169 (quoting *Licci*, 732 F.3d at 173). Relevant factors at this second step of the due process analysis include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 568 (2d Cir. 1996) (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113–14 (1987)).

"With respect to the first factor[—]the burden imposed on Defendant in having to litigate this action in New York[—]the Court finds this factor incapable of tilting the scales given modern advances in communication and transportation." *Camacho v. Vanderbilt U.*, No. 18 CIV. 10694 (KPF), 2019 WL 6528974, at *8 (S.D.N.Y. Dec. 4, 2019). For the fiscal year ending June 30, 2024, USC's operating revenues were over $7 billion. Compl. ¶ 9. USC offers at least one class in New York City, and, until March 10, 2025, it maintained a "University Advancement Office" in New York. *Id.* ¶ 32. In light of USC's financial resources, its activities in New York, and the convenience afforded by modern technology, USC has not presented a "compelling case" that litigating this action in New York would impose a meaningful burden on it. *Eades*, 799 F.3d at 169.

Nor has USC shown that California has a more significant interest in adjudicating the case. USC argued that, because several of the relevant social media platforms (TikTok, Meta, and YouTube) are based in California, that state has a stronger interest in adjudicating this case. Mot. at

22; Dkt. No. 29-3 ("Lambert Decl.") ¶¶ 4, 6, 9; Dkt. Nos. 29-4, 29-6, 29-9.  But it is also true that "New York[—]Plaintiff[s'] home state[—]has a manifest interest in providing effective means of redress for its residents." *Camacho*, 2019 WL 6528974, at *8 (internal quotation marks and citation omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985).

Nor does the third factor, Plaintiffs' "interest in obtaining convenient and effective relief," change the analysis on balance.  Plaintiffs and USC each contended that evidence and witnesses relevant to this case are located in their respective, preferred forum.  *See* Mot. at 22; Opp'n at 18–19. "As such, the location of witnesses bears no substantial weight on the reasonableness inquiry." *Dow Jones*, 797 F. Supp. 3d. at 332.  Moreover, considering that Plaintiffs are located in New York, litigating the matter here would serve their interest in obtaining convenient and efficient relief.  *See id.* (finding third factor to favor plaintiffs' "interest in obtaining convenient and effective relief," where both sides asserted that key witnesses were located in their respective fora); *Camacho*, 2019 WL 6528974 at *8 ("maintaining the action here would be convenient and efficient for Plaintiff because he and, presumably, some of his witnesses and other evidence, are located here.").

The Court finds that the fourth and fifth factors do not suggest that the exercise of jurisdiction in New York would be unreasonable.  Because relevant evidence and witnesses may be located in both California and New York, the interests of the interstate judicial system in efficient resolution do not favor one forum over the other.  Likewise, both states have an interest in "developing the substantive law of personal jurisdiction in internet . . . cases" involving copyright infringement.  *Dow Jones*, 797 F. Supp. 3d. at 332.

Because USC has minimum contacts with New York, and the exercise of jurisdiction over it would not be unreasonable, Plaintiffs have shown that the exercise of jurisdiction over USC comports with due process.

### B.  Venue is Proper in this District

Venue is proper in this district under 28 U.S.C. § 1400(a). Sony Music's claims of copyright infringement arise under the Copyright Act, and thus venue is governed by 28 U.S.C. § 1400(a). Under this provision, copyright claims "may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). A defendant resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Because the Court concludes that USC is subject to personal jurisdiction in this District, venue is proper pursuant to 28 U.S.C. § 1400(a).

### C. Plaintiffs' Claims for Vicarious and Contributory Infringement Must Be Dismissed

Plaintiffs' secondary infringement claims must be dismissed because they have not pleaded that anyone other than USC committed direct copyright infringement. While "[t]he Copyright Act does not expressly render anyone liable for infringement committed by another[,] . . . [the] common law doctrines permit a court to impose secondary liability where just and appropriate." *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 658 (S.D.N.Y. 2013), *aff'd*, 910 F.3d 649 (2d Cir. 2018) (internal quotation marks and citation omitted). "Vicarious liability for copyright infringement may arise only when the defendant had the right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials." *EMI Christian Music Group, Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99 (2d Cir. 2016) (internal quotation marks omitted). "To state a claim for contributory infringement, a [party] must allege facts that a [counterparty] 'with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another . . . .'" *Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 383 (S.D.N.Y. 2016) (quoting *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

For a court to impose secondary liability, "there must be the direct infringement of a third party." *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009). "[I]n order to hold a defendant secondarily liable[,] someone else must have directly infringed on the copyright holder's rights." *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 750 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 Fed. Appx. 51 (2d Cir. 2014) (summary order).

Plaintiffs have not alleged that anyone other than USC infringed on its rights as a copyright holder. They assert this claim only as a backstop, alleging that "[i]f USC is not directly liable for the infringing conduct . . . then it is at least vicariously liable for such conduct" or "at least contributorily liable[.]". Compl. ¶ 104, 114. However, the complaint did not allege that anyone other than USC committed copyright infringement. To the contrary, Plaintiffs expressly allege that only USC is responsible for the alleged infringement. Compl. ¶ 4 (alleging that "[n]one of these channels are personal student or faculty accounts"). Plaintiffs say that there is such a third party infringer only if USC is not liable, but Plaintiffs plead that USC is exclusively liable. Because the imposition of secondary liability requires "the direct infringement of a third party," Plaintiffs' claims for contributory and vicarious infringement must be dismissed. *Arista Records*, 633 F. Supp. 2d at 149; *see also Laine v. Pride*, No. 09 CV 3057 (HB), 2010 WL 199927, at *7 (S.D.N.Y. Jan. 19, 2010) ("Even if I were to construe Plaintiff's complaint to allege contributory infringement on the part of the Defendant, the claim must still fail because she does not allege any actual direct infringement by another party."); *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 610 (S.D.N.Y. 2020) (dismissing claims for vicarious and contributory infringement where "there [] [were] no facts supporting the existence of any third parties, as both theories clearly require.").

## V.    LEAVE TO AMEND

USC's motion to dismiss Plaintiffs' claims for vicarious and contributory infringement is granted with leave to amend as described below. "The court should freely give leave [to amend] when justice so requires."

Fed. R. Civ. P. 15(a)(2).  However, leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).  The Court cannot conclude that further amendment would not cure the deficiencies identified in the complaint.  The Court therefore grants Plaintiffs leave to file a second amended complaint solely to cure the deficiencies identified with respect to those claims no later than 30 days from the date of this order.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015).

## VI.    CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED in part and DENIED in part.  Defendant's motion to dismiss for lack of personal jurisdiction and improper venue is DENIED.  Defendant's motion to dismiss Plaintiffs' claims for vicarious and contributory copyright infringement is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 29.

SO ORDERED.

Dated:  January 13, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge